IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
_____ )
                                   )
SAM K., by and through his         )
PARENTS, DIANE C. and GEORGE K.,   )
                                   )
                Plaintiffs,        )   Civ. No. 12-00355 ACK-BMK
                                   )
        vs.                        )
                                   )
                                   )
DEPARTMENT OF EDUCATION, State     )
of Hawaii,                         )
                                   )
                Defendant.         )
_____ )
```

**Order Affirming in Part and Reversing in Part the Administrative
Hearing Officer's Decision on May 24, 2012 in DOE-SY 1112-047[1/]**

**I.  PROCEDURAL BACKGROUND**

This case comes before the Court on review of the

decision of the State of Hawaii's Office of Administrative

Hearings concerning the due process hearings brought by Sam K.

---

[1/] At the January 25, 2013 hearing for this appeal,
Defendant's counsel conceded that (1) Sam's placement was
continuously bilateral from the 2008 placement until the 2010-
2011 school year, (2) Plaintiffs' claim was timely because the
two-year statute of limitations applies to a bilateral placement,
and (3) Parents were therefore entitled to reimbursement.  Rough
Transcript, Sam K. v. Haw. Dep't of Educ., Civ. No. 12-00355 ACK-
BMK at 25-27 ("THE COURT:  So wasn't the status of the child at
Loveland still a bilateral placement?  [DEFENDANT'S COUNSEL]:
Based on the administrative hearing officer's decision, I would
have to agree . . . . THE COURT:  So you agree that the parents
are entitled to reimbursement then?  Because the two-year statute
of limitations applies where there's a bilateral placement.
[DEFENDANT'S COUNSEL]:  Given the situation, Your Honor I would
have to agree with the Court on that issue.").  Nevertheless, the
Court issues its following order, in full.

("Student" or "Sam"), by and through his parents Diane C. and
George K. ("Parents"), against the State of Hawaii's Department
of Education ("DOE").  The Court has jurisdiction pursuant to 20
U.S.C. § 1415(i).

On June 20, 2012, Plaintiffs filed a Complaint against
the DOE.  ECF No. 1.  By way of their Complaint, Plaintiffs
appeal the Administrative Hearings Officer's Findings of Fact,
Conclusions of Law, and Decision issued on May 24, 2012 in the
case DOE-SY 1112-047 ("Decision").  Id. at 3.  On October 15,
2012, Plaintiffs filed an Opening Brief for this administrative
appeal.  ECF No. 40.  Defendant filed an Answering Brief on
November 15, 2012.  ECF No. 42.  Plaintiffs filed a Reply on
November 29, 2012.  ECF No. 43.  On January 25, 2013, this Court
held a hearing regarding this appeal of the AHO's Decision.  ECF
No. 45.

## II.  FACTUAL BACKGROUND[2]

The parties in this case have been embroiled in
litigation since 2003, and the factual background for the events
prior to this case may be found in the following decisions by
this Court:  (1) D.C. v. Haw. Dep't of Educ., Civ. No. 05-00562
ACK-BMK, *Order Remanding Administrative Decision* (June 23, 2006)

---

[2]  The facts as recited in this Order are for the purpose
of disposing of the current motion and are not to be construed as
findings of fact that the parties may rely on in future
proceedings.

(wherein the Court ordered the Hearings Officer to determine Sam K.'s eligibility under the IDEA) (hereinafter, "D.C."), and (2) D.C. v. Haw. Dep't of Educ., 550 F. Supp. 2d 1238 (D. Haw. 2008) (hereinafter, "D.C. II").[3/]

Sam K. is currently 17 years old and has been deemed eligible for special education and related services under the IDEA since July 19, 2006.  D.C. II, 550 F. Supp. 2d 1238 (D. Haw. 2008).  According to psychologists and other tests in the record, Sam has anxiety, depression, language issues, speech issues, social issues, and central auditory processing disorder.  ROA Transcript at 115-17, ECF No. 28; Pet. Ex. 8 at 8.27, ECF No. 24.  Sam has attended Loveland Academy from February 2003 until the present time.  D.C. II, 550 F. Supp. 2d 1238; Pet. Ex. No. 16 at 16.3, ECF No. 25; Order Granting Plaintiffs' Motion for Stay Put, Sam K. v. Haw. Dep't of Educ., Civ. No. 12-00355 at 4, ECF No. 35.  While at Loveland Academy for the 2010-2011 school year, Sam has made progress in his communication, learning, emotional, and academic skills.  Pet. Ex. 1 at 1.4, 1.6, 1.12, ECF No. 24.; Pet. Ex. 2 at 2.6-.7, ECF No. 24; Pet. Ex. 4 at 4.9, ECF No. 24.

In D.C. II, this Court ruled in favor of Sam K. for the following reasons:  (1) the DOE failed to timely offer Sam K. an appropriate IEP, (2) Sam's placement at the private school was

---

[3/] Both cases were suits brought by Sam K.'s parents, D.C. and G.K., as guardians ad litem on behalf of Sam K., a disabled minor.

bilateral instead of unilateral because of an administrative officer's decision in favor of parents, and (3) because Sam's placement was bilateral, the statute of limitations for unilateral placement, Haw. Rev. Stat. § 302A-443(a)(2) ("H.R.S."), did not bar Sam's claim for reimbursement.  Id. at 1247.  Accordingly, the Court ordered the DOE to pay for Sam K.'s special education and related services at Loveland Academy for the 2005-2007 school years.  Id. at 1252.

Despite the ruling in favor of Plaintiffs, the DOE failed to pay for Sam's special education and related services at Loveland; the DOE also failed to offer an appropriate IEP for Sam for the 2007-2008, 2008-2009, and 2009-2010 school years.  Order Granting Plaintiffs' Motion for Stay Put, ECF No. 35 at 4; Pet. Ex. No. 14 at 14.6, ECF No. 24.  After Parents filed requests for Due Process hearings under 20 U.S.C. § 1415 on March 10, 2010 for the 2007-2010 school years, the DOE and Parents entered into a settlement agreement to resolve those claims ("Settlement Agreement").  Id. at 4, Pet. Ex. No. 16 at 16.3, ECF No. 25.

In the Settlement Agreement, the DOE agreed to pay for Sam's special education and related services for the 2007-2008, 2008-2009, and 2009-2010 school years, including extended school years.  Pet. Ex. No. 16 at 16.3, ECF No. 25.  The Settlement Agreement did not cover the 2010-2011 school year.  Id. at 16.3-.4.  Additionally, the Settlement Agreement did not specify a

change in placement for Sam at the end of the 2009-2010 school year.  Id.

In March of 2010, the DOE contacted Parents in order to arrange an IEP meeting in April 2010 for the 2010-2011 school year.  Pet. Ex. No. 15 at 15.1.  Parents asked the DOE to postpone the IEP meeting until after Sam completed education assessments at Loveland.  Id. at 15.2.  Due to scheduling conflicts between the parties, the first IEP meeting was held on June 30, 2010.  Pet. Ex. No. 17 at 17.3-.5.  The Prior Written Notice given to Plaintiffs after the DOE reevaluated Sam states that Sam is eligible for services under the IDEA based on the category of Specific Learning Disability.  Id. at 17.62.  The parties held subsequent IEP meetings in 2010 on July 23, July 28, August 6, August 27, September 17, and October 29.  Pet. Ex. No. 18-23.  Parents and the DOE had a difficult time working together.  ROA Transcript at 654, ECF No. 23 (parties stipulate relationship "was bad").  On January 14, 2011, over five months after the beginning of the 2010-2011 school year, the parties held an IEP meeting where Defendant gave Parents a signed IEP. Pet. Ex. No. 24, Pet. Ex. No. 19 at 19.3, ECF No. 25 (stating that the 2010-2011 school year started on August 2, 2010).  The DOE sent a Prior Written Notice ("PWN") to Parents by January 27, 2011.  Pet. Ex. No. 24 at 24.33-.34, ECF No. 25.

Sometime in July or August of 2010, the DOE started to consider the Windward Intensive Learning Center as a potential placement for Sam ("ILC" or "Public Placement").  ROA Transcript at 855, Pet. Ex. No. 20 at 20.26.  The program director for the ILC ("Program Director") attended the IEP meetings on August 6 and October 29, 2010.  Pet. Ex. No. 20 at 20.26, Pet. Ex. No. 23 at 23.29.  The record does not reflect that any other program directors attended the IEP meetings.  Pet. Ex. No. 18-23.  Prior to January 14, 2011, someone from the DOE wrote a handwritten note on a memorandum indicating the DOE's decision to transition Sam to the ILC.  Pet. Ex. No. 35.  Parents did not have a chance to examine the ILC or express objections until after the DOE gave Parents the IEP on January 14, 2011.  Pet. Ex. No. 24 at 24.34-.35; ROA Transcript at 768-70, ECF No. 31; ROA Transcript at 91-92, ECF No. 28.

The ILC is a facility for special education students with behavioral and/or emotional issues.  ROA Transcript at 752-53.  The program uses a token system and a level system in order to address behavioral issues through means of positive reinforcement.  ROA Transcript at 759-60, 782-83, ECF No. 31  Students attending the ILC are only there for an average time of seven to eight months.  ROA Transcript at 771, ECF No. 31.  A few days after Parents visited the ILC, one of the three students attending the facility assaulted both the Director and another

-6-

teacher; as a result, the student was arrested by the police.
ROA Transcript at 768-70, ECF No. 31; ROA Transcript at 91-92,
ECF No. 28.  At the time of the IEP due process hearing in May
2011, one out of the seven students attending the DOE placement
was sent there from juvenile court.  ROA Transcript at 784, ECF
No. 31.

Parents disputed the finality of the January IEP signed
by the DOE from March 2011 until April 2011.  Pet. Ex. No. 24 at
24.35-.39.  The DOE stated in letters dated March 9, 2011 (Pet.
Ex. No. 24 at 24.36) and April 20, 2011 (Pet. Ex. No. 24 at
24.44) that the IEP issued on January 14, 2011 was the final IEP.

On or around October 27, 2011, Plaintiffs filed a
due process request alleging that the DOE failed to provide an
appropriate IEP.  Pet. Ex. 25 at 25.1, ECF No. 25.  On May 24,
2012, after four days of hearings, the Administrative Hearings
Officer ("AHO") issued the following conclusions in his Decision:
(1) Plaintiffs met their burden to show that the DOE
predetermined Sam's proposed placement before the final IEP
without significant parental input; (2) Plaintiffs met their
burden of showing that the DOE proposed placement failed to
provide an educational program that met Sam's unique needs; (3)
the private school selected by Plaintiffs was an appropriate
placement; and (4) despite Plaintiffs' success on the placement
issues, Plaintiffs cannot claim reimbursement for private school

-7-

expenses because the 180-day statute of limitations in H.R.S. § 302A-443(a)(1) for unilateral school placements bars Plaintiffs' claim.  ROA Ex. 27.

Plaintiffs only appeal the last conclusion, arguing that H.R.S. § 302A-443(a)(1) does not apply because the AHO's other conclusions prove that the placement is bilateral instead of unilateral.  Plaintiffs' Opening Brief at 5, ECF No. 40.  The DOE in defense to Plaintiffs' claim contests the AHO's conclusions that (1) the DOE proposed placement failed to provide a FAPE to Sam, and (2) the private school placement was appropriate for Sam.  Defendant's Answering Brief at 10-14, ECF No. 42.

### III.  STANDARD

In evaluating an appeal of an administrative decision under the IDEA, the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C). The Ninth Circuit has construed this section as requiring "de novo review of the state hearing officer's findings and conclusions."  Ashland Sch. Dist. v. Parents of Student R.J., 588 F.3d 1004, 1008 (9th Cir. 2009).  However, the statutory requirement "that a reviewing court base its decision on the

'preponderance of the evidence' is by no means an invitation to
the courts to substitute their own notions of sound educational
policy for those of the school authorities which they review."
Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982).  Rather, "due
weight" must be given to the findings in the administrative
proceedings.  Id.

The amount of deference given to an administrative
hearing officer's findings is a matter of discretion for the
court.  See Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d
884, 891 (9th Cir. 1995) (quoting Gregory K. v. Longview Sch.
Dist., 811 F.2d 1307, 1311 (9th Cir. 1987)).  The Court must
"consider the findings 'carefully and endeavor to respond to the
hearing officer's resolution of each material issue,' but the
court 'is free to accept or reject the findings in part or in
whole.'"  Id. (quoting Gregory K., 811 F.2d at 1311).  When the
court exercises discretion to determine what weight to give the
hearing officer's findings, the court may "examine the
thoroughness of those findings" and accord greater deference when
they are "thorough and careful." Id. (quoting Union Sch. Dist. v.
Smith, 15 F.3d 1519, 1524 (9th Cir. 1994)); See also Cnty. of San
Diego v. Cal. Special Educ. Hearing Office, 93 F.3d 1458, 1466
(9th Cir. 1996) ("This circuit gives the state hearing officer's
decision "substantial weight" when it "evinces his careful,

impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues presented.")

In this case, the AHO's thirty-three page Decision carefully considered the arguments of the parties and provided detailed analysis of the testimony and documentary evidence presented during the hearing.  AHO's Decision, ECF No. 23. Therefore, the Court is inclined to give greater deference to the findings of the Decision.  See <u>Capistrano</u>, 59 F.3d at 891 <u>and Cnty. of San Diego</u>, 93 F.3d at 1466 (9th Cir. 1996).

<u>IV.  DISCUSSION</u>

**A.  The IDEA Statutory Framework**

Congress passed the Individuals with Disabilities Education Act ("IDEA") to ensure that children with disabilities have a "free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A) (2010).  The IDEA's goal is to prevent both the exclusion of handicapped children from public education and the "widespread practice of relegating handicapped children to private institutions or . . . special education classes."  <u>N.D. v. Haw. Dep't of Educ.</u>, 600 F.3d 1104, 1115 (9th Cir. 2010) (citing <u>Burlington v. Mass. Dep't of Educ.</u>, 471 U.S. 359, 373 (1985)).  However, the IDEA also strives to ensure that the public education provided is

appropriate for a child's needs; handicapped children should not be "left to fend for themselves in classrooms designed for education of their non[-]handicapped peers." K.D. v. Dep't of Educ., State of Haw., 665 F.3d 1110, 1115 (9th Cir. 2011) (quoting Rowley, 458 U.S. at 191).

A "free and appropriate public education" ("FAPE") is defined as "special education and related services that – (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title."  20 U.S.C. § 1401(9)(2010).  The IEP is a "comprehensive statement of the educational needs of a handicapped child and the specially designed instruction and related services to be employed to meet those needs." Burlington, 471 U.S. at 368; See 20 U.S.C. § 1401(14) (2010) and 20 U.S.C. § 1414(d) (2010).

A court's inquiry in reviewing administrative decisions under the IDEA is twofold:  "First, has the State complied with the procedures set forth in the Act?  And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive

educational benefits?  If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." Rowley, 458 U.S. at 206-07 (footnotes omitted); see also Union Sch. Dist. v. Smith, 15 F.3d 1519, 1524 (9th Cir. 1994).

**B.  Plaintiffs' Challenge to DOE-SY 1112-047**

**1. Whether Haw. Rev. Stat. § 302A-443(a)(2) Bars Plaintiffs' Reimbursement Claim**

The AHO concluded that Plaintiffs' request for reimbursement was time-barred by the statute of limitations under H.R.S. § 302A-443(a)(2) because Sam's placement at Loveland for the 2010-2011 school year was unilateral, not bilateral.  The AHO reached this conclusion by assuming that (1) K.D. v. Dep't of Educ., 665 F.3d 1110 (9th Cir. 2011) changed the analysis set forth by this Court in D.C. II, 550 F. Supp. 2d 1238 (D. Haw. 2008), and (2) Parents' decision to continue enrollment at Loveland Academy constituted a unilateral placement at the beginning of the 2010-2011 school year.  ROA Ex. 27 at 418-19. Because the AHO applied the law incorrectly, this Court reverses the AHO's Decision and holds that Plaintiffs' reimbursement claim is not time-barred under H.R.S. § 302A-443(a)(2).

The statute at issue, H.R.S. § 302A-443(a), reads as follows:

(a) An impartial hearing may be requested by any parent or guardian of a child with a disability, or by the department, on any matter relating to the identification, evaluation, program, or placement of a child with a disability; provided that the hearing is requested:

(1) Within two years of the date the parent, guardian, or department knew or should have known about the alleged action that formed the basis of the request for a hearing; and

(2) Notwithstanding paragraph (1), within one hundred and eighty calendar days of a unilateral special education placement, where the request is for reimbursement of the costs of the placement.

As this Court noted in D.C. II, the determination of which statute of limitations applies depends on whether the private placement is "unilateral" or "bilateral."  550 F. Supp. 2d at 1248.  The term "unilateral special education placement" remained undefined in H.R.S. § 302A-443 throughout the events resulting in these proceedings.  See H.R.S. § 302A-443 (2007 & Supp. 2011).  Therefore, the Court will use the definition used in D.C. II and adopted by the Ninth Circuit:  "A unilateral special education placement occurs when one party unilaterally (i.e., without consent or agreement of the other party) enrolls the student in a special education program."  K.D., 665 F.3d at

-13-

1122 (quoting <u>Makiko D. v. Hawaii</u>, No. 06-CV-00189, 2007 WL 1153811, at *7 (D. Haw. 2007)).

In this case, Sam's placement is bilateral, not unilateral.  This Court ruled in 2008 that a favorable administrative ruling for the parents and the private school placement "renders the placement bilateral, as it represents an agreement between the State and the parents."  <u>D.C. II</u>, 550 F. Supp. 2d at 1249 (citing <u>Burlington v. Mass. Dep't. of Educ.</u>, 471 U.S. 358, 372 (1985); <u>Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings</u>, 903 F.2d 635, 641 (9th Cir. 1990); <u>Bd. Of Educ. V. Schutz</u>, 290 F.3d 476, 482-84 (2d Cir. 2002); and <u>Bd. Of Educ. Of Montgomery County v. Brett Y.</u>, 959 F. Supp. 705, 710 (D. Md. 1997)).  This 2008 holding of the Court has not changed, and the Ninth Circuit has used this principle when examining a similar case involving the statute of limitations in H.R.S. § 302A-443(a)(2).  <u>Teresa L. v. Haw. Dep't of Educ.</u>, 325 Fed. Appx. 583, 2009 WL 1322342 (9th Cir. 2009)(holding that the two-year statute of limitations in H.R.S. § 302A-443(a)(2) applied because the administrative decision finding private placement appropriate constituted a bilateral agreement between the state and the child's parents).

In <u>Teresa</u>, the plaintiffs asked for reimbursement for the 2005-2006 school years.  <u>Teresa</u>, 325 Fed. Appx. at 583.  The

defendant school district[4/] argued that plaintiffs' reimbursement claim was time-barred because plaintiffs failed to file the reimbursement request within the statute of limitations period for a unilateral placement. Id. at 584. However, plaintiffs had received a favorable administrative hearing officer's ruling on June 26, 2006 stating that plaintiff's choice of placement was appropriate for the 2004-2005 school year.[5/] As a result of this June 26, 2006 decision, the court concluded that "this favorable administrative decision . . . constituted an agreement between the Department of Education and [plaintiffs] that rendered [plaintiff's] home placement a bilateral placement." Id. at 584. Therefore, "a two-year statute of limitations applied to [plaintiff's] hearing request for reimbursement for the 2005-2006

---

[4/] The Hawaii DOE was the defendant in the Teresa case. Teresa L. v. Haw. Dep't of Educ., 325 Fed. Appx. 583, 2009 WL 1322342 (9th Cir. 2009).

[5/] The administrative hearings officer's ruling on June 26, 2006 stated that the 2004-2005 IEP failed to provide the student a FAPE, and that reimbursement should be awarded because the plaintiff's choice of placement was appropriate. Id. at 584. The hearings officer did not rule on the reimbursement issue for the 2005-2006 school year because the plaintiff failed to properly raise her claim in the June 2006 proceeding. Order Affirming the Hearings Officer's October 23, 2006 Order Granting Respondent's Motion to Dismiss with Regard to Petitioner's Request for Reimbursement for Private Placement at 3-4, Teresa L. v. Haw. Dep't of Educ., Civ. No. 07-00009, (D. Haw. 2007). The plaintiff subsequently filed an action to claim reimbursement for the 2005-2006 school year, which is the year at issue in Teresa.

school year." Id. at 585.  Accordingly, the court found that

plaintiffs' reimbursement request was timely.[6/]  Id.

In this case, the AHO Decision issued on May 24, 2012

constitutes a favorable decision for the plaintiffs because the

AHO found that (1) the DOE denied Sam a FAPE, and (2) Loveland

was an appropriate placement for the 2010-2011 school year.  ROA

Ex. 27 at 413-15.  Therefore, the AHO Decision reconfirmed Sam

K.'s placement as a bilateral placement.  Teresa, 325 Fed. Appx.

583, 2009 WL 1322342; D.C. II, 550 F. Supp. 2d at 1249.  This

reconfirmed bilateral placement found in D.C. II in 2008, and

there had been no change in the status of that placement in the

intervening years - in fact, there had been no new IEP

established in those years and Sam K. had continued at Loveland.

Moreover, just as the court in Teresa applied the June 26, 2006

AHO decision to the 2004-2006 school years, this Court applies

the AHO May 24, 2012 Decision to the 2010-2011 school year.  See

Teresa, 325 Fed. Appx. at 584.  Accordingly, the two-year statute

---

[6/] The court in Teresa noted that there were arguably
several dates that could have been used to determine when the
statute of limitations period started to run.  The court mentions
November 2005 as a potential date, which was when the defendant
mailed plaintiff a copy of the IEP.  Another potential date was
June 26, 2006, which was when the AHO issued the decision
regarding the 2004-2005 school year.  Teresa, 325 Fed. Appx. at
585.  However, because plaintiff had filed her claim on July 13,
2006, the court stated that it need not address this issue
because the claim was timely regardless of the date used to mark
the beginning of the statute of limitations time period.  Id.

of limitations in H.R.S. § 302A-443(a)(1) applies to Plaintiffs'
due process request.

Plaintiffs filed their reimbursement request on October
27, 2011 at the latest.  Pet. Ex. 25 at 25.1, ECF No. 25.
Therefore, because the IEP was offered sometime in January 2011,
Plaintiffs' reimbursement claim is timely.[7/]  See Teresa, 325
Fed. Appx. 583, 2009 WL 1322342 and D.C. II, 550 F. Supp. 2d at
1249 (holding that a favorable AHO decision in July 2006 rendered
Plaintiffs' placement as bilateral; therefore, the reimbursement
request for the 2005-2006 and 2006-2007 school years was timely).

Furthermore, this Court observed in its "Order Granting
Plaintiffs' Motion for Stay Put" issued on August 22, 2012 (ECF
No. 35) that "Sam's actual placement has never changed from the
time of this Court's initial ruling in 2008." ECF No. 35 at 18.
Plaintiffs and Defendant agreed to Sam's enrollment at Loveland
Academy for the 2007-2008, 2008-2009, and 2009-2010 school years
in the Settlement Agreement. Pet. Ex. No. 16 at 16.3, ECF No. 25.
This Settlement Agreement signed by the DOE and Parents for the
2007-2010 school years effectively continued Sam's placement from

---

[7/] Defendant's only argument is that Plaintiffs'
reimbursement claim clearly falls outside of the 180-day statute
of limitations.  See Defendant's Answering Brief at 8-10, ECF No.
42.  The Court finds this factual argument irrelevant because
Student's placement at Loveland is a bilateral placement;
therefore, the two year statute of limitations applies.  H.R.S. §
302A-443(a)(1).

the 2008 decision to the 2010-2011 school year.[8/]   See ECF No. 35.

The AHO erroneously concluded in his May 24, 2012 Decision that Sam's continued enrollment at Loveland was a unilateral placement at the beginning of the 2010 school year according to K.D. v. Haw. Dep't of Educ., 665 F.3d 1110, 1122 (9th Cir. 2011).  AHO's Decision, ECF No. 23.  In K.D., the court examined whether a settlement agreement constituted an initial bilateral agreement between the DOE and the plaintiff.  665 F.3d at 1118-20.  The parent in K.D. first enrolled her child at Loveland in November 2006 and subsequently filed a request for a due process hearing with the DOE.  Id. at 1115.  To resolve the dispute, both parties signed a settlement agreement stating that the DOE would pay K.D.'s tuition for the 2006-2007 school year. Id. at 1115.  The settlement agreement provided that the parent would "participate in transition planning for [student] to a . . . public school at the end of the 2006-2007 school year."  Id. at 1115.  The settlement agreement did not specifically mention that the DOE agreed to placement of the child at Loveland.  Id.  The

_____

[8/] The Court notes that the AHO found that the Settlement Agreement created a bilateral placement for Sam K. during the 2009-2010 school year.  Admin. Hearing Officer Decision at 28(f). However, such a finding conflicts with the K.D. decision because the court in K.D. held that an express agreement on placement, not merely an agreement on reimbursement, was required for a settlement agreement to establish a bilateral placement.  665 F.3d at 1119.

-18-

plaintiffs subsequently challenged the IEP for the 2007-2008 school year, but they lost on the administrative level because the hearing officer found that the DOE provided a FAPE.  Id. at 1115-16.

The Ninth Circuit concluded under these facts that no bilateral agreement existed between the plaintiffs and the defendant.  First, the court noted that plaintiffs did not have a "favorable agency or district court decision agreeing with K.D.'s initial unilateral placement at Loveland."  Id. at 1118.  Second, the settlement agreement did not create a bilateral placement because it called for a transition to a public school at the end of the school year.  Id. at 1119.  The court also noted that the settlement agreement did not specifically mention "placement" but only provided for tuition reimbursement.  Id.

Contrary to the AHO's conclusion, Sam's case is distinguishable from K.D. for the following reasons.  First, the Settlement Agreement in this case only provides that Parents would participate in an "IEP/Reevaluation meeting by the end of June 2010"; in contrast to K.D., there is no provision for a transition to a public school.  Pet. Ex. No. 16 at 16.3.; K.D., 665 F.3d at 1116.  Second, Plaintiffs in this case have prior favorable decisions from this Court's decision in 2008 in D.C. II as well as two administrative hearing officers' decisions; with each one constituting a bilateral agreement to the Loveland

placement.  D.C. II, 550 F. Supp. 2d at 1249 (holding that Sam's placement was transformed from a unilateral placement to a bilateral placement).

While the Settlement Agreement in this case does not explicitly state that the DOE agreed to "placement," the DOE's silence in the settlement agreement regarding an alternative placement means that there was no intervening event to change Sam's bilateral placement from 2006.  Unlike the plaintiff in K.D., Sam does not need the Settlement Agreement to establish an initial bilateral placement; he received a favorable AHO decision and this Court's 2008 ruling prior to the Settlement Agreement. D.C. II, 550 F. Supp. 2d 1238, 1249 (D. Haw. 2008).

Based on the facts of this case, while the Settlement Agreement did not create an initial bilateral placement, it continued the effect of the bilateral placement from 2006 until the 2010-2011 school year.  First, the Court notes that Sam was not offered an IEP for the 2007-2008, 2008-2009, and 2009-2010 school years.  Pet. Ex. 14 at 14.6.  Second, the Settlement Agreement does not provide for a change in placement as mentioned above.  Pet. Ex. No. 16 at 16.3.  Contrast K.D., 665 F.3d at 1115 and Zvi D. v. Ambach, 694 F.2d 904, 907 (2d Cir. 1982) (settlement agreement providing that student would be transitioned to public placement did not constitute a bilateral agreement).  Third, at the beginning of the 2010-2011 school

-20-

year, no IEP had been offered to Sam.  Pet. Ex. No. 24, Pet. Ex. No. 19 at 19.3.

In effect, the last IEP dispute to establish placement occurred during the 2006-2007 school year, where the Court affirmed Plaintiffs' placement of Sam at Loveland.  D.C. II, 550 F. Supp. 2d 1238, 1240 (D. Haw. 2008).  As this Court noted in D.C. II, "it [is] problematic to ever label a private placement as "unilateral" when it occurs before any IEP has been offered for the parents to accept or reject."[9/]  D.C. II, 550 F. Supp. 2d at 1249.  Because Sam did not have an IEP in place at the start of the 2010-2011 school year and the Settlement Agreement continued Sam's education at Loveland as per the Court's placement for the 2006-2007 school year, Parents' decision to continue to enroll Sam in Loveland effectively was a continuation of a bilateral placement rather than a unilateral placement. Therefore, Sam's placement at Loveland, being bilateral instead of unilateral at the beginning of the 2010-2011 school year, constitutes an additional reason that the two-year statute of

_____

[9/] The Court by noting this fact does not reverse the AHO's finding that the DOE was not at fault for the late IEP given in January, months after the school year began.  See Admin. Hearing Officer Decision at 411-12, ECF No. 23.  The Court upholds the AHO finding that the DOE was not responsible for the tardiness of the IEP.  ROA Transcript at 654 (parties stipulate that the relationship "was bad").  Regardless of fault, the Court's main point in noting the late IEP is that no intervening event changed Sam's placement from bilateral to unilateral prior to the 2010-2011 school year.

limitations in H.R.S. § 302A-443(a) applies, and Plaintiffs'

reimbursement claim is not time-barred.[10/]

Finally, as noted earlier, at the January 25, 2013

hearing for this appeal, Defendant's counsel conceded that (1)

Sam's placement was continuously bilateral from the 2008

placement until the 2010-2011 school year, (2) Plaintiffs' claim

was timely because the two-year statute of limitations applies to

a bilateral placement, and (3) Parents were therefore entitled to

reimbursement.  Rough Transcript, Sam K. v. Haw. Dep't of Educ.,

Civ. No. 12-00355 ACK-BMK at 25-27 ("THE COURT:  So wasn't the

status of the child at Loveland still a bilateral placement?

[DEFENDANT'S COUNSEL]:  Based on the administrative hearing

officer's decision, I would have to agree . . . . THE COURT:  So

you agree that the parents are entitled to reimbursement then?

Because the two-year statute of limitations applies where there's

a bilateral placement.  [DEFENDANT'S COUNSEL]:  Given the

situation, Your Honor I would have to agree with the Court on

that issue.").

   **2.   Whether Defendants May Challenge the AHO's Placement
   Conclusions Without a Cross-Appeal**

_____

[10/]   In K.D., the student's placement at the private school
had been unilateral, and the court ruled that the settlement
agreement did not changed the nature of the placement because,
inter alia, it did not include an agreement regarding placement.
K.D., 665 F.3d at 1118-20.

Plaintiffs argue that the DOE's challenge to the AHO's conclusions regarding placement is barred because of the DOE's failure to file a cross-appeal.[11/] Plaintiffs' Reply Brief at 2, ECF No. 43. The Ninth Circuit has stated that a prevailing party need not cross appeal to "defend a judgment on any ground properly raised below, so long as that party seeks to preserve, and not to change, the judgment." Lee v. Burlington Northern Santa Fe Railway Co., 245 F.3d 1102, 1107 (9th Cir. 2001)[12/]

---

[11/] Plaintiffs cite to Haw. Admin. R. § 8-60-68 and § 8-60-70 in their Reply Brief to support their argument that Defendant is required to cross appeal the placement issues. Plaintiffs' Reply Brief at 2, ECF No. 43. However, these sections do not provide rules or limitations for a cross-appeal; rather, the regulations provide the general process for appealing an AHO's decision. Therefore, these rules do not bar Defendant's arguments in defense of the AHO Decision.

[12/] In Lee, the defendant in a railway tort case brought a motion for summary judgment to dismiss the plaintiff's claim on the grounds that federal law preempted plaintiff's tort suit. Id. at 1105. The defendant lost the motion for summary judgment, and the case was tried by a jury. Id. At the conclusion of the trial, the jury entered a verdict in favor of the defendant. Id. The plaintiff appealed the jury verdict to the Ninth Circuit, and the court of appeals affirmed the final judgment on the grounds that federal law preempted the plaintiff's case – effectively reversing the district court's ruling on defendant's motion for summary judgment. Id. at 1106. The plaintiff argued that the defendant should not be able to argue the federal preemption issue because the defendant did not file a cross-appeal of the district court's summary judgment ruling. Id. at 1106-07. The court of appeals held that the defendant did not need to file a cross-appeal of the summary judgment ruling, reasoning that the federal preemption issue was merely a defense of the final judgment – if defendant won the federal preemption issue on appeal, then the rights of the parties would stay the same as if the final judgment in favor of the defendant remained in effect. Id. at 1107.

(continued...)

(quoting Northwest Airlines, Inc. v. Cnty. of Kent, 510 U.S. 355, 364 (1994); See Rivero v. City and Cnty. of San Francisco, 316 F.3d 857 (9th Cir. 2002)(holding that defendant-appellees did not need to cross appeal the issue of qualified immunity because the issue was an alternative ground to affirm the district court's judgment); accord El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 478-79 (1999)("[A]ppellee may "urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court," but may not "attack the decree . . . to enlarg[e] his own rights thereunder or [] lessen[] the rights of his adversary.").

Defendant in this case contests the AHO's placement conclusions in order to defend the judgment that Plaintiff is not entitled to reimbursement. The placement issue is a precondition for the ultimate result of reimbursement. See Burlington v. Mass. Dep't. of Educ., 471 U.S. 358, 370 (1985)(noting that the private placement must be deemed appropriate in order for parents to receive reimbursement). If Defendant prevails on the issue that the private placement is not appropriate for Sam, then the Plaintiffs would not be entitled to tuition reimbursement, which creates the same result as the AHO's Decision below that denied tuition reimbursement to the Plaintiffs. Therefore, if this

---

[12]/ (...continued)

Court decides the placement issue in Defendant's favor, the judgment would not "enlarge" the rights of Defendant or "lessen" the rights of Plaintiffs.[13/] See Rivero, 316 F.3d at 862. Accordingly, the Court may consider Defendant's arguments without the need for a cross-appeal.

### 3. Whether the DOE Denied Plaintiff a FAPE by Failing to Provide an Appropriate Placement

The Ninth Circuit recently affirmed that "[t]he proper standard to determine whether a child has received a free appropriate public education is the 'educational benefit' standard set forth by the Supreme Court in Rowley," and further noted that

---

[13/] Plaintiffs' citation to Dep't of Educ. v. Karen I., 618 F. Supp. 2d 1239, 1247 n.3 (D. Haw. 2009) fails to apply to this case.  In Karen I., the plaintiff/appellee attempted to expand the issue of reimbursement for residential expenses to include enforcement for other IEP issues like parental visits and transportation.  618 F. Supp. 2d at 1247 n.3.  The parental visit and transportation issues were unrelated to the issue of residential expenses – the question of whether or not plaintiffs should be reimbursed for residential expenses was not dependent on whether or not the plaintiff should receive parent visits and transportation expenses.  Therefore, the plaintiff's claim for parent visits and transportation expenses could not be considered a defense of the decision to award residential expenses, and the plaintiff should have filed a cross-appeal for these additional claims.  In contrast to Karen I., in this case Plaintiffs must prevail on the issue that the private placement is appropriate as a precondition for receiving tuition reimbursement.  See Burlington, 471 U.S. at 370.  If Defendant prevails on the issue that the private placement is inappropriate, then the final judgment of the AHO that Plaintiffs should not receive tuition reimbursement would remain effective.  Therefore, Defendant need not file a cross appeal because Defendant's argument is a defense of the AHO's Decision.

> [s]ome confusion exists in this circuit regarding whether the Individuals with Disabilities Education Act requires school districts to provide disabled students with "educational benefit," "some educational benefit" or a "meaningful educational benefit."  As we read the Supreme Court's decision in Rowley, all three phrases refer to the same standard.  School districts must, to "make such access meaningful," confer at least "some education benefit" on disabled students.  For ease of discussion, we refer to this standard as the "educational benefit" standard.

J.L. v. Mercer Island Sch. Dist., 592 F.3d 938, 951 n. 10 (9th Cir. 2010) (internal citations omitted).

An appropriate education "does not mean the absolutely best or 'potential-maximizing' education for the individual child."  Gregory K., 811 F.2d at 1314.  Rather, the state must only provide "a basic floor of opportunity" for the student.  Id.  "[A] school district fulfills its substantive obligations under the IDEA if it provides an IEP that is likely to produce progress, not regression, and if the IEP affords the student with an opportunity greater than mere trivial advancement."  T.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 254 (2d Cir. 2009) (citation omitted); N.S. v. Hawaii, Civ. No. 09-00343 SOM-KSC, 2010 WL 2348664, at *4 (D. Haw. 2010).

The DOE argues that the ILC would have provided a "basic floor of opportunity," and that Plaintiffs failed to establish "any inadequacy in the programming or services offered."  Defendant's Answering Brief at 10, ECF No. 42.  Contrary to the DOE's assertions, this Court affirms the AHO's conclusion that Sam would have regressed from attending a

-26-

behavior-focused program with temporary students and juvenile criminals.  AHO's Decision at 413, ECF No. 23.

This Court agrees with the AHO's findings that the DOE Proposed Placement at the ILC was inappropriate because the behavioral modification program offered by the DOE placement was the wrong type of program to meet Sam's needs.  The facility primarily focused on treating behavior disorders by using a point system and a token economy to change behavior by means of positive reinforcement.  ROA Transcript at 759-60, 782-83, ECF No. 31.  However, Sam's primary disorder is not a behavior disorder; instead, Sam has anxiety, depression, language, speech, and social issues, as well as central auditory processing disorder.  ROA Transcript at 115-17, ECF No. 28; Pet. Ex. 8 at 8.27, ECF No. 24  ("Most disruptive behavior disorders are associated with compromised social and interaction skills, as are mood and anxiety disorders.  It is the [Licensed Psychologist]'s strong opinion that Sam's history and current presentation provide much stronger support for mood or anxiety disorders in Sam's case."); See also Pet. Ex. 1 at 1.3, ECF No. 24; Pet. Ex. 2 at 2.3, ECF No. 24.  The record reflects that Loveland Academy attempted to use behavioral programs like the one at the DOE placement in the past without success because such programs

-27-

triggered Sam's mood disorders.[14/]  ROA Transcript at 111-12, ECF

No. 28.  Therefore, the AHO correctly concluded that the ILC's

behavioral program was inappropriate for Sam's particular

learning disabilities.

Furthermore, the Psychological Evaluation dated April

4, 2010 explains that a stable environment is important for Sam's

progress because he has great difficulty adjusting to unexpected

changes.  Pet. Ex. 8 at 8.3-8.4, ECF No. 24.  Classroom

assessments indicate that "[Sam] can overreact to situations,

loses control easily and has a difficult time calming down after

an incident."  Pet. Ex. 24 at 24.8, ECF No. 25; See also Pet. Ex.

1 at 1.2, ECF No. 24.

The testimony from the Program Director of the ILC

demonstrated that students attending the ILC stayed for an

average time of only seven to eight months.  ROA Transcript at

771, ECF No. 31.  Moreover, one of the three students attending

the ILC when Sam's Parents visited the facility was arrested for

assaulting both the Director and another teacher only a few days

after Parents' visit.  ROA Transcript at 768-70, ECF No. 31; ROA

Transcript at 91-92, ECF No. 28.  At the time of the IEP due

process hearing, one out of the seven students attending the ILC

---

[14/] The record supports that Sam's emotional disorders impact
his ability to learn; when suffering from anxiety or depression,
Sam's education progress deteriorates and he does not benefit
from academic help.  ROA Transcript at 120, 130, ECF No. 28.

was sent there from juvenile court.  ROA Transcript at 784, ECF
No. 31.  The frequent and potentially tumultuous changes at the
ILC would likely hinder Sam's education because of his specific
mental and emotional needs for stability in the learning
environment.  Therefore, this Court upholds the AHO's conclusion
that the "DOE Proposed Placement . . . was ill advised,
inappropriate, and potentially disastrous to student and his
education."  AHO's Decision at 414, ECF No. 23.

        Defendant's arguments regarding the provision of
occupational therapy and the ILC's ability to provide academic
services fails to refute that the structure of the environment,
which is geared toward treating behavior disorders, would trigger
Sam's mood and anxiety disorders, precluding him from benefitting
from other types of education assistance.  See Defendant's
Answering Brief at 11-12, ECF No. 42.  While the DOE's behavior
program may work for some children, the IDEA requires each
child's program to be "individually designed to provide
educational benefit to the handicapped child."  Union School
Dist. v. Smith, 15 F.3d 1519, 1525 (9th Cir. 1994) (holding that
the education placement for an autistic child was inappropriate
because the placement did not serve other autistic children and
could not teach the "attending skills" child needed in order to
benefit from language instruction).

In this case, Sam requires an individualized program that will assist in controlling his mood and anxiety disorders so that he can benefit from academic instruction, not a program that will trigger his disorders and impede progress.  Cf. Seattle School Dist. v. B.S., 82 F.3d 1493 (9th Cir. 1996) (holding that residential placement of student was appropriate because student required intensive care and a structured environment to address her behavioral disabilities before she could receive an education benefit).  Because the DOE placement was likely to cause Sam to regress, the DOE denied Sam a FAPE by failing to provide a "basic floor of opportunity."  Gregory K., 811 F.2d at 1311.

**4.  Whether the DOE Failed to Provide Sam a FAPE by Predetermining his Placement in Violation of the IDEA**

Independently of the substantive issue of placement, this Court also finds that Defendant denied Sam a FAPE by predetermining his placement without input from Plaintiffs.  States must comply with both the procedural and the substantive requirements of the IDEA.  K.D., 665 F.3d at 1114 (citing Amanda J. v. Clark Cnty. Sch. Dist., 267 F.3d 877, 891 (9th Cir. 2001)).  While procedural flaws do not automatically result in a denial of a FAPE; such flaws may cause a denial of FAPE if they result in a loss of educational opportunity or seriously infringe on parental opportunity to participate in the IEP process.  W.G. v. Bd. of Tr. of Target Range Sch. Dist. No. 23, 960 F.2d 1479 (9th Cir.

1992)(superseded by statute on other grounds by 20 U.S.C. § 1414 (d)(1)(B)(internal citations omitted). "A school district violates the IDEA if it predetermines placement for a student before the IEP is developed or steers the IEP to the predetermined placement." <u>K.D.</u>, 665 F.3d at 1123 (citing <u>Spielberg v. Henrico Cnty. Public Sch.</u>, 853 F.2d 256 (4th Cir. 1988) and <u>W.G.</u>, 960 F.2d at 1484 (internal citations omitted)).

In this case, the AHO concluded that Defendant violated the IDEA by creating a predetermined placement for Sam without input from Plaintiffs. AHO's Decision at 410, ECF No. 23. Defendant does not contest this at any point in the Answering Brief. <u>See</u> Defendant's Answering Brief at 12, ECF No. 42.

The record shows that the program director at the proposed public placement was the only program director from a potential placement to attend IEP meetings; no other potential placements are mentioned. <u>See</u> ROA Transcript at 679-80, ECF No. 31; Pet. Ex. No. 20 at 20.26, ECF No. 25 (showing attendance of Placement Program Director at August 6, 2010 meeting, four months before IEP placement issue was discussed with Plaintiffs). There is also a handwritten note that supports the conclusion that months before the final IEP, Defendant had already chosen the Public Placement without Plaintiffs' input. Pet. Ex. No. 35, ECF No. 25. In doing so, Defendant denied Plaintiffs a meaningful opportunity to engage in the important process of discussing the

ability of the placement to meet Sam's needs.  See <u>Spielberg</u>, 853 F.2d 256 <u>and</u> <u>W.G.</u>, 960 F.2d 1479.  Based on the factual support in the record, this Court affirms the AHO's conclusion that Defendant denied Sam a FAPE because Defendant predetermined his placement.

### 5.   <u>Whether Loveland Academy was an Appropriate Placement</u>

If a parent places a student in a private school as a result of the public school's failure to provide a FAPE, a court may require the DOE to reimburse the parents for the private school tuition.  See 20 U.S.C. § 1412(a)(10)(C)(ii); <u>Forest Grove</u>, 557 U.S. at 232; <u>Burlington</u>, 471 U.S. at 370.  In order to receive reimbursement, Plaintiffs must show that the private school placement was an appropriate placement in addition to proving that the school district failed to provide a FAPE.  <u>C.B. v. Garden Grove Unified School Dist.</u>, 635 F.3d 1155, 1159 (9th Cir. 2011).

A private placement is appropriate if it "provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction."  <u>C.B.</u>, 635 F.3d at 1159 (quoting <u>Frank G. v. Bd. of Educ.</u>, 459 F.3d 356, 365 (2d Cir. 2006)).  The term "unique educational needs" is broadly construed to include the "academic, social, health, emotional, communicative, physical, and vocational needs"

of a student.  Seattle Sch. Dist. v. B.S., 82 F.3d 1493, 1500
(9th Cir. 1996).

     The evidence in the record demonstrates that Loveland
provides Sam with an education tailored to meet his unique needs;
therefore, Loveland is an appropriate placement.  Sam's test
scores for a 2011 Psychosocial and Cognitive Assessment show that
his cognitive skills have improved during his time at the private
placement.  Pet. Ex. 1 at 1.4, 1.6, 1.12, ECF No. 24.  According
to the licensed psychologist conducting the testing, Sam's past
failures in the education environment from his auditory
processing disorder and memory deficits resulted in "frustration,
anger, and demoralization" that impeded his education.  Pet. Ex.
1 at 1.12, ECF No. 24.  However, the "combination of mental
health interventions, speech therapy, and highly individualized
instruction appears to have enabled Sam to break out of that
cycle."  Id.  Sam's communication and emotional skills have also
improved while at the private placement.  Pet. Ex. 2 at 2.6-2.7,
ECF No. 24.  As a result of the growth in these areas, Sam has
experienced academic progress as well.  Pet. Ex. 4 at 4.9, ECF
No. 24.

     Sam's actual progress in several education areas during
the 2010-2011 school year demonstrates that the AHO correctly
concluded that Loveland was an appropriate placement.  See C.B.,
635 F.3d at 1158-59 (private placement deemed appropriate because

-33-

school provided "significant growth in several learning areas and in development") and Union School Dist. v. Smith, 15 F.3d 1519 (9th Cir. 1994)(private placement deemed appropriate because it implemented child's program and child demonstrated significant progress in language and social skills).

Defendant argues that Loveland is insufficient because the school cannot help Student earn a high school diploma or transition to a community college. However, the litmus test for an appropriate placement is not whether a student can earn a high school diploma. "Parents need not show that a private placement furnishes every special service necessary to maximize their child's potential." C.B., 635 F.3d at 1159 (quoting Frank G., 459 F.3d at 365 (holding that parents should receive reimbursement for private services even though school could only meet some of student's educational needs)).

Defendant also argues that Loveland cannot mainstream Sam with non-disabled students, and that Loveland is a more restrictive environment on the IDEA continuum than the DOE placement. However, courts are not bound to automatically choose the less restrictive placement. While the IDEA endeavors to mainstream handicapped children with their non-handicapped peers to the fullest extent possible, the main emphasis of the IDEA is to ensure that the unique needs of the child are met so that the child actually benefits from the instruction. See Rowley, 458

-34-

US. at 200-01 ("Implicit in the congressional purpose of
providing access to a [FAPE] is the requirement that the
education . . . confer some educational benefit upon the
handicapped child."); Cnty. of San Diego v. Cal. Special Educ.
Hearing Office, 93 F.3d 1458, 1468 (9th Cir. 1996) ("While every
effort is to be made to place a student in the least restrictive
environment, it must be the least restrictive environment which
also meets the child's IEP goals.").  Hence, a child may be
placed in a more restrictive environment if such services are
needed to provide an actual education benefit.  Poolaw v. Bishop,
67 F.3d 830, 836 (9th Cir. 1995) (holding that school district
was correct in placing child in a special education environment
instead of attempting to mainstream because child required
special communication skills in order to benefit from further
education).[15/]

In Sam's case, the DOE proposed placement is
inappropriate even if it is less restrictive because the
placement does not provide a "basic floor of opportunity" for

---

[15/] Defendant's citation to J.S. v. Haw. Dep't of Educ., 2010
WL 3384911, Civ. No. 10-00022 DAE-LEK (2010) fails to support
Defendant's argument.  The court in J.S. concluded that the DOE
placement was more appropriate than the private school placement
because the DOE placement provided the necessary services to
teach communication skills to deaf children.  See Id. at 11-18.
While the least restrictive environment analysis supported the
change to the DOE placement, the controlling analysis examined
the appropriateness of the services provided to the child.  Id.

Sam.  _See_ Section IV.B.3 above.   Although Loveland Academy may be considered more restrictive on the spectrum because of the lack of opportunity to interact with non-handicapped children, Loveland is currently the environment where Sam receives an actual education benefit.  _See_ Section IV.B.5 above.  Therefore, because the IDEA emphasizes actual benefit to the child instead of blindly following the spectrum, the Court rejects Defendant's argument that Loveland is inappropriate under the LRE spectrum.

Defendant also levels an accusation that Sam misses services "depending on the availability of service providers" and asserts that this "may be why Student presents with an apparent increase in behavioral issues."  Defendant's Answering Brief at 12, ECF No. 42.  Defendant fails to provide any citation to the record to support this speculative assertion.  _Id._  The Court is not inclined to rule against Plaintiffs on the basis of an unsupported statement.

**6.  Whether this Court Should Exercise its Discretion to Grant Tuition Reimbursement to Plaintiffs**

Once a court determines that a school district denied a child a FAPE and that the private placement is appropriate, the district court must then "exercise its broad discretion and weigh equitable considerations to determine whether, and how much, reimbursement is appropriate."  _C.B._, 635 F.3d at 1159 (citing _Florence Cnty. School Dist. Four v. Carter_, 510 U.S. 7 (1993)).

"In making this determination, the district court may consider all relevant equitable factors, including, inter alia, notice to the school district before initiating the alternative placement; the existence of other, more suitable placements; the parents' efforts in securing the alternative placement; and the level of cooperation by the school district." Anchorage Sch. Dist. v. M.P., 689 F.3d 1047, 1053 (9th Cir. 2012).

In this case, the Court finds that equitable considerations do not bar reimbursement.  The DOE had sufficient notice that Sam would be continuing his enrollment at Loveland during the 2010-2011 school year based on the past conduct of the parties.  See Pet. Ex. 16 (settlement agreement showing that DOE agreed to pay Sam's tuition at Loveland for the 2009-2010 school year) and Ex. 19 (parties aware that IEP might not be completed by the beginning of the 2010-2011 school year).  Additionally, by predetermining placement, the DOE denied Parents the opportunity to provide input on a suitable public placement for their son. See Spielberg, 853 F.2d at 258-59 (court allowed private placement to continue where school district violated IDEA by predetermining placement).  Parents acted reasonably in securing private placement in order to ensure that their son progressed academically.  See Anchorage School Dist., 689 F.3d at 1059 (parents acted reasonably in finding private tutoring services for their son) and C.B., 635 F.3d at 1160 (affirming district

-37-

court decision that gave great weight to the fact that student received significant educational benefits in private placement). Accordingly, this Court awards to Parents tuition reimbursement for the 2010-2011 school year and 2010-2011 extended school year.

The Court notes that, because Defendant prevailed on the statute of limitations question below, the issue of the appropriateness of the tuition costs has not been addressed.[16] Accordingly, the Court directs Plaintiffs to submit for the DOE's review all relevant bills and invoices specifying the services provided to Student each month, including the itemized rates, fees, and tuition charged therefor, for the 2010-2011 school year and the 2010-2011 extended school year.  In the event of any disagreement regarding the invoices, the Court directs the parties to submit the same to Magistrate Judge Kurren for resolution.

## V.   CONCLUSION

For the foregoing reasons, the Court AFFIRMS the AHO's Findings of Fact, Conclusions of Law, and Decision in DOE-SY 1112-047 dated May 24, 2012, except for the AHO's conclusion that Haw. Rev. Stat. § 302A-443(a)(2) bars Plaintiff Sam K.'s claim

---

[16] The Court notes that, in the Closing Brief for the due process proceedings in front of the AHO, Defendant asked for a fair opportunity to ensure that Loveland's charges for services to Sam are reasonable.  AROA Ex. 19 at 329, ECF No. 23.

for tuition reimbursement, which is REVERSED.  The Court finds

that Plaintiffs are entitled to reimbursement.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, February 13, 2013



_____
Alan C. Kay
Sr. United States District Judge

Sam K. v. Haw. Dep't of Educ., Civ. No. 12-00355 ACK-BMK: Order Affirming in
Part and Reversing in Part the Administrative Hearing Officer's Decision on
May 24, 2012 in DOE-SY 1112-047.